# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIM ALLEN, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 10-1931 |
| CHICAGO STEEL (PA), LLC, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                         **JULY 27, 2010**

      Presently before the Court are the following Motions: 1) Plaintiffs Tim Allen, Dave Bergner, Tim Bushey, Frank Ellis, Barry Gosline, Harley Green, Tracy Grogan, Aaron Grogan, Jim Ksionka, Paul McLaughlin, Joe Monhand, Tony Perrone, and Ed Sherry's (collectively, "Plaintiffs") Motion for Reconsideration of this Court's June 1, 2010 Order dismissing Plaintiffs' Complaint; 2) Plaintiffs' Motion for Remand to the Philadelphia Court of Common Pleas; and 3) Defendants Chicago Steel (PA), LLC ("CS-PA"), Chicago Steel (IN), LLC ("CS-IN"),[1] Chicago Steel and Tinplate Processing, Inc., Chicago Steel and Tinplate, Inc., Chicago Steel Limited

---

[1] Plaintiffs allege that CS-PA and CS-IN were operated as a single common business enterprise controlled by common shareholders, managers, directors, and/or officers. (Pls.' Compl. ¶ 35.) Further, Plaintiffs aver that "[CS-IN] is a successor-in-interest to [CS-PA] and that said Defendant should be responsible to Plaintiffs for the payment of their owed wages pursuant to successor liability under Pennsylvania law." (Id. ¶ 41.)

Partnership, Chicago Steel, Inc.,[2] Dan Phillips ("Phillips"),[3] Kathy Paxton ("Paxton"),[4] Bill Boak ("Boak"), and Claudia Eaton's ("Eaton")[5] (collectively, "Defendants") Motion to Dismiss. For the following reasons, Plaintiffs' Motion for Reconsideration is granted, Plaintiffs' Motion for Remand is denied, and Defendants' Motion to Dismiss is granted in part and denied in part.[6]

I.  **BACKGROUND**

Plaintiffs are former employees of CS-PA, a steel fabrication plant located in Fairless Hills, Pennsylvania. Local 4889-02 (the "Union") represented these employees in the bargaining unit at the Fairless Hills facility. The Union and CS-PA entered a Collective Bargaining Agreement ("CBA") that was in effect from May 5, 2005 through May 4, 2010. The steel fabrication plant closed in May 2009.

Plaintiffs allege that they are owed wages related to their previous employment at CS-PA. Specifically, they claim that they are owed $30,724.88 in vacation pay and $12,000 in severance pay. The amount each Plaintiff is allegedly owed is outlined in the Complaint. (Pls.' Compl. ¶¶ 30-31.)

On May 19, 2009, Phillips, in his role as President of CS-PA, sent an email to Plaintiffs'

---

[2] Chicago Steel and Tinplate Processing, Inc., Chicago Steel and Tinplate, Inc., Chicago Steel Limited Partnership, and Chicago Steel, Inc. will hereinafter be referred to as the "Chase Street Defendants."

[3] Phillips is the President of CS-PA and CS-IN.

[4] Paxton is the Treasurer of CS-PA and CS-IN.

[5] Philips, Paxton, Boak, and Eaton will be hereinafter referred to as the "Individual Defendants."

[6] The Court considers Defendants' Motion to Dismiss on the merits in this Memorandum because it is vacating the June 1, 2010 Order that granted the Motion as uncontested.

representative in which he stated: "Guys attached is the current vacation worksheet as of 5-19-09. As of right now I have no idea when monies would be available for any payments. I will keep you posted as I know more." (Id., Ex. A.) Attached to the email was a worksheet that allegedly detailed the amount of "vacation wages" and "severance as of 5/1/09" each individual employee was due and how those amounts were calculated. (Id., Ex. B.)

Subsequently, on June 18, 2009, Phillips sent a letter to all CS-PA employees in which he stated, in relevant part:

> Kathy [Paxton] has been negotiating with the bank in an attempt to allow some payments of vacation time for the ex-employees of [CS-PA]. To date that has not been successful due to the current condition of the industry as well as the current financial condition of [CS-IN].
>
> I know this is not what you wanted to hear from me; however it is the current status related to Vacation and Severance pay.
>
> As conditions change I will attempt to keep you abreast.

(Id., Ex. C.) According to the Complaint, on July 1, 2009, Plaintiffs then requested Phillips to provide a promissory note on behalf of CS-PA and CS-IN for the severance and vacation pay amounts. On July 7, 2009, Phillips responded: "I think you probably already know that I can not issue a promissory note on behalf of the bank. [CS-PA] is no longer in business and the bank owns all assets." (Id., Ex. D.)

Among other allegations in the Complaint, Plaintiffs claim that the Individual Defendants participated in a common enterprise or conspiracy to deprive Plaintiffs of wages. Plaintiffs allege that the Individual Defendants continued to pay themselves through CS-PA, CS-IN, and/or the Chase Street Defendants despite owing Plaintiffs the relevant severance and vacation pay. Plaintiffs aver that all Defendants converted this property owed to Plaintiffs for their own benefit.

Plaintiffs filed their Complaint in the Court of Common Pleas for Philadelphia County on April 9, 2010. On April 30, 2010, Defendants filed a Notice of Removal to this Court. The Complaint contains the following Counts: (1) Count I: Failure to Pay Wages – Pennsylvania Wage Payment and Collection Law ("WPCL") (v. Individual Defendants, CS-PA, CS-IN, and Chase Street Defendants); (2) Count II: Conversion (v. All Defendants); (3) Count III: Prejudgment Interest, 41 P.S. § 202, et seq. (v. All Defendants); (4) Count IV: Civil Conspiracy (v. All Defendants); and (5) Count V: Piercing the Corporate Veil (v. All Defendants). Plaintiffs request damages "for an amount in excess of Fifty Thousand ($50,000) Dollars, exclusive of interest and costs," "liquidated damages in the amount of 20% of [their] wages," and attorneys' fees. (Id. ¶¶ 58, 70.)

On May 4, 2010, Defendants filed their Motion to Dismiss the action. On May 28, 2010, after giving Plaintiffs two separate extensions to file a Response to the Motion, Defendants filed a Reply requesting that the Motion to Dismiss be granted as uncontested after Plaintiffs failed to file a Response by May 27, 2010 – the date when the second extension expired. Prior to the deadline, Plaintiffs' counsel made no attempt to contact opposing counsel or this Court for additional time.

On May 28, 2010, Plaintiffs filed both a Motion to Remand to state court and a Motion for Enlargement of Time to respond to Defendants' Motion to Dismiss. On June 1, 2010, we granted Defendants' Motion to Dismiss as uncontested pursuant to Local Rule of Civil Procedure 7.1(c) due to: (1) the fact we had still not received a Response from Plaintiffs; (2) Plaintiffs' counsel's disregard for the Motion to Dismiss briefing deadline; (3) Plaintiffs' counsel's

unacceptable reasons provided in the Motion for Enlargement of Time for failing to file the brief in a timely fashion; and (4) Plaintiffs' counsel's failure to give opposing counsel or the Court notice that he would not be able to meet the May 27, 2010 deadline. As a result, we dismissed Plaintiffs' claims with prejudice and denied Plaintiffs' Motion for Enlargement of Time. On the same date, Plaintiffs finally responded to Defendants' Motion to Dismiss. On June 11, 2010, Plaintiffs filed the outstanding Motion for Reconsideration of the June 1, 2010 Order.

## II. STANDARDS OF REVIEW

### A. Motion for Reconsideration

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. Id. Federal courts have a strong interest in the finality of judgments, and motions for reconsideration should be granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

### B. Motion for Remand

Pursuant to 28 U.S.C. § 1441(a), defendants may remove a civil action filed in a state court if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). "'The defendants bear the burden of establishing removal jurisdiction and compliance with all

pertinent procedural requirements.'" Inaganti v. Columbia Props. Harrisburg LLC, No. 10-1651, 2010 WL 2136597, at *1 (E.D. Pa. May 25, 2010) (citation omitted). Upon removal, a plaintiff may bring a motion to remand the case back to state court. Id. The federal statutes regarding removal are strictly construed in favor of remand. Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

Remand to the state court is appropriate when there is "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993). Subject matter jurisdiction in federal court includes two categories of cases: "(1) diversity cases pursuant to 28 U.S.C. § 1332, encompassing disputes between citizens of different states alleging an amount-in-controversy in excess of $75,000; and (2) federal question cases pursuant to 28 U.S.C. § 1331 . . . ." Landmark Amer. Ins. Co. v. FDC Fire Protection, Inc., No. 08-3513, 2010 WL 1838377, at *4 (D.N.J. May 6, 2010). Notably, "[r]emand is mandatory and can occur at any time during the litigation if the court determines that it lacks federal subject matter jurisdiction." Inaganti, 2010 WL 2136597, at *2.

### C. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corporation v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

6

do." 550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a

short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

### A. Motion for Reconsideration

The Court is disturbed by the disrespect Plaintiffs' counsel showed to this Court and opposing counsel by failing to file a timely Response to the Motion to Dismiss without notice or explanation – even though he was given two previous extensions for the filing. As the Court noted in its June 1, 2010 Order, Plaintiffs' counsel's subsequent reference in his Motion for Enlargement of Time to personal obligations which he clearly knew about well in advance, and other nebulous "matters,"[7] were unacceptable reasons for failing to meet the deadline or notify the Court or opposing counsel of his need for additional time.

Nevertheless, because the Court's June 1, 2010 Order crossed with Plaintiffs' Response

---

[7] Plaintiffs' counsel now contends that his failure to file a timely Response originated from a calendaring error in his office. Of course, Plaintiffs' counsel should have fully explained this situation to the Court prior to the Motion for Reconsideration stage. As Plaintiffs concede in the Motion for Reconsideration, "[i]n hindsight, Plaintiffs' counsel should have immediately requested additional time from the Court upon discovering this error in the calendaring system." Instead, Plaintiffs' counsel's conduct merely initiated a chain of events that led to a waste of the parties' and this Court's resources.

8

and based on the current state of Third Circuit law in this area, the Court will vacate the Order to avoid an error of law and to prevent manifest injustice to Plaintiffs because of their counsel's conduct. Specifically, it does not appear that Plaintiffs themselves were responsible for the delay, there did not appear to be any prejudice to Defendants as a result of the delay, and other sanctions other than dismissal are available in this case. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868-70 (3d Cir. 1984).

While the June 1, 2010 Order will be vacated, Plaintiffs' counsel will be ordered to pay the attorneys' fees and costs associated with the Defendants having to file a Reply to the Motion to Dismiss – a brief that solely addressed Plaintiffs' counsel's failure to file a timely Response and requested that the Motion be granted as uncontested. This sanction is appropriate given Plaintiffs' counsel's conduct, including his complete disregard for the scheduling deadlines set by this District's Local Rules, as modified by the multiple extensions of time.

**B. Motion for Remand**

Defendants attempt to base removal to this Court on both federal question and diversity jurisdiction. Defendants' argument for federal question jurisdiction is based on preemption pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Plaintiffs' Motion for Remand merely challenges whether this Court has federal question jurisdiction and does not address whether this Court has diversity jurisdiction. As discussed below, the Court needs further information to determine if federal question jurisdiction is appropriate. Nevertheless, it is clear from Defendants' Notice of Removal that diversity jurisdiction exists.

In the Notice of Removal, Defendants establish that all Plaintiffs are citizens of

Pennsylvania and that all Defendants are citizens of states other than Pennsylvania. (Defs.' Notice of Removal ¶¶ 10-14.) Notably, Defendants specifically point out that CS-PA and CS-IN are limited liability companies and that such companies are citizens of each state in which their members are citizens. Kimberly-Clark P.A., LLC v. Del. County Reg'l Water Quality Control Auth., 527 F. Supp. 2d 430, 433 (E.D. Pa. 2007) ("[E]very circuit that has addressed the issue treats an LLC as a partnership rather than a corporation, determining an LLC's citizenship from the citizenship of all of its members."). Defendants set forth that both LLCs are owned by Phillips, Robert Bobb, and Bruce Mannakee and that each is a citizen of a state other than Pennsylvania. Plaintiffs do not challenge these contentions.

In addition, Defendants have established that the $75,000 amount in controversy threshold of 28 U.S.C. § 1332(a) is met in this action. Pursuant to Third Circuit law,

> [W]here the state-court complaint unequivocally states that the total amount sought is less than the jurisdictional threshold, the removing defendant must prove by a legal certainty that the amount in controversy exceeds the jurisdictional amount . . . . On the other hand, where the complaint does not expressly state that the amount in controversy is less than the jurisdictional minimum, the case must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount.

Rosado v. Encompass Ins. Co., No. 10-1877, 2010 WL 2431829, at *2 (E.D. Pa. June 10, 2010) (citing Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007) and Samuel-Bassett v. Kia Motors Am. Inc., 357 F.3d 392, 397-98 (3d Cir. 2004)). Moreover, "[w]here there are factual disputes regarding the amount in controversy, the removing defendant must prove, by a preponderance of evidence, the facts establishing that the amount in controversy exceeds the jurisdictional threshold." Id. (quoting Chrin v. Ibrix., Inc., 293 F. App'x 125, 127 (3d Cir. 2008)). In removal cases, while the analysis of the amount in controversy begins with an

examination of the complaint filed in state court, the court may also look to the notice of removal and "other documents relevant to the value of the claims" when the complaint is silent or ambiguous as to the amount in controversy. Id.

In their Complaint, Plaintiffs allege that Defendants are liable "for an amount in excess of Fifty Thousand ($50,000) Dollars, exclusive of interest and costs," "liquidated damages in the amount of 20% of [their] wages," and attorneys' fees. (Id. ¶¶ 58, 70.) In this case, based solely on a reading of the Complaint, we find that it is ambiguous as to whether the amount in controversy threshold is met. However, it clearly does not appear to a legal certainty that Plaintiffs cannot recover the jurisdictional amount. In fact, Defendants have attached a Case Management Conference Memorandum filed in state court which shows that Plaintiffs have demanded $80,000 in damages. (Defs.' Notice of Removal, Ex. A at 2.) In sum, Defendants have satisfied this Court that the amount in controversy requirement is met and that diversity jurisdiction is present. Thus, the Motion to Remand is denied.[8]

### C. Motion to Dismiss

#### 1. Plaintiffs' WPCL Claim for Failure to Pay Wages

As an initial matter, Defendants argue that Plaintiffs' alleged entitlement to vacation and severance pay cannot be resolved without examining the terms of the relevant CBA. There are

---

[8] Plaintiffs also make a fleeting argument that "Defendants have waived their right to removal by appearing in state court, specifically at a Scheduling Conference wherein discovery deadlines and trial was [sic] established." (Pls.' Mot. for Remand at 3.) Courts have held that "the statutory right to removal will not be lost unless the defendant's intent to waive is clear and unequivocal." Selvaggi v. Prudential Prop. and Cas. Ins. Co., 871 F. Supp. 815, 817 (E.D. Pa. 1995). In addition, "courts generally have held that the right to remove is maintained where there has been no litigation on the merits and no prejudice to any of the parties." Id. at 818. Defendants' mere attendance at a court-ordered scheduling conference did not waive their right to removal to federal court.

specific provisions in the CBA that address entitlement to vacation and severance pay. As a result, Defendants argue that Plaintiffs' WPCL claim is completely preempted by § 301 of the LMRA. Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1997). Finally, they claim that Plaintiffs fail to state a claim under § 301 of the LMRA because they did not utilize the grievance procedures outlined in the CBA. Rehm v. Quaker Oats Co., 478 F. Supp. 619, 621 (M.D. Pa. 1979).

Based on the many United States Supreme Court decisions in this area, the Third Circuit has stated that "claims based squarely on a collective bargaining agreement or requiring analysis of its terms are preempted by section 301 and removable to the federal courts" on that basis. Antol, 100 F.3d at 1117. Based on the correspondence sent from Phillips to Plaintiffs, wherein he alludes to the vacation and severance pay and the specific amounts connected to each Plaintiff, the Court is unable to determine the relevance of the CBA at this point in the litigation.

In addition, even assuming that the Court needs to look to the CBA and that § 301 of the LMRA controls, there are clearly issues regarding whether the grievance procedure provision under the agreement was triggered because there was "a dispute or difference of opinion"[9] between CS-PA and the employees under the CBA, whether Plaintiffs made any attempt to follow the grievance procedure, and whether any attempt to exhaust remedies under the procedure would have been futile for any reason. These issues, among others, need to be fleshed out during discovery. As a result, the Court will not dismiss Plaintiffs' WPCL claim on preemption grounds or for failure to state a claim because they did not plead timely exhaustion of

---

[9] The "Grievance Procedure" section of the CBA states: "For purposes of this Agreement, a grievance is any dispute or difference of opinion between the Company and any of its employees covered by this Agreement." (Defs.' Mot. to Dismiss, Ex. A at 6.)

a grievance procedure.[10]

### 2. Plaintiffs' WPCL Claim Against the Individual Defendants

At a minimum, the Defendants request that the WPCL claim be dismissed as to the Individual Defendants. Courts have found that "a defendant's corporate title, without more, is insufficient to create liability under the WPCL." White v. Ciber, Inc., No. 07-1483, 2007 WL 3491272, at *3 (M.D. Pa. Nov. 14, 2007). A plaintiff must "plead or prove that the officer or the agent charged took an 'active role' in the corporate advising, policy-making or decision-making that led to the alleged violation of the WPCL . . . ." Id.

In the instant case, Plaintiffs have met this pleading standard in regard to Phillips, in his role as President of CS-PA and CS-IN, and Paxton, in her role as Treasurer of CS-PA and CS-IN. The Complaint clearly alleges that Phillips took an "active role" in decisions related to the vacation and severance pay. (Pls.' Compl. ¶¶ 32-34.) Moreover, his direct involvement is also evidenced by the correspondence he had with Plaintiffs and their representatives that is attached to the Complaint. (Id., Ex. A-D.)

It is also clear that Plaintiffs have met their pleading obligation in regard to Paxton. Both the Complaint (id. ¶ 33) and correspondence indicate that Paxton was working with both Phillips and a bank in regard to the wages at issue. For example, in a June 18, 2009 letter to CS-PA's former employees, Phillips stated: "Kathy [Paxton] has been negotiating with the bank in an

---

[10] The Defendants do not specifically address Plaintiffs' conversion and civil conspiracy claims in the Motion to Dismiss. Instead, they simply mention in a footnote that those claims fail as well because they are predicated on Plaintiffs having a contractual right to wages pursuant to § 301 of the LMRA and Plaintiffs have failed to state such a claim. As discussed above, at this stage of the litigation, the Court does not find preemption of the WPCL claim or a failure to state a claim under § 301. Thus, Plaintiffs' conversion and civil conspiracy claims survive.

attempt to allow some payments of vacation time for the ex-employees of Chicago Steel (PA) LLC. To date that has not been successful due to the current condition of the industry as well as the current financial condition of Chicago Steel (IN) LLC." (Id., Ex. C.) Plaintiffs have pled sufficient facts to support their WPCL claim against Phillips and Paxton.

Significantly, in regard to the other Individual Defendants (Boak and Eaton), Plaintiffs concede they have not made the same "active role" allegations in the Complaint. (Pls.' Resp. Defs.' Mot. Dismiss at 15 n.5.) Thus, the WPCL claim against those Defendants will be dismissed.

### 3. Plaintiffs' Piercing the Corporate Veil Claim

Defendants also claim that Plaintiffs have failed to state a valid piercing the corporate veil claim. Pennsylvania courts recognize that the corporate veil may be pierced "whenever it is necessary to avoid injustice." Rinck v. Rinck, 526 A.2d 1221, 1223 (Pa. Super. Ct. 1987). Nevertheless, "there is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995).

Although there is no definitive test for piercing the corporate veil pursuant to Pennsylvania law, courts routinely apply a totality-of-the-circumstances test when determining whether to impose individual liability on shareholders, officers, and directors of the company at issue. Partners Coffee Co., LLC v. Ocean Servs. and Prods. Co., No. 09-236, 2010 WL 1177436, at *12 (E.D. Pa. Mar. 25, 2010) (citing Plastipak v. Packaging, Inc. v. DePasquale, 75 F. App'x 86, 87-89 (3d Cir. 2003)).

> The Third Circuit has held that the factors to be considered under Pennsylvania law with respect to the alter-ego theory include, but are not limited to: failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; siphoning funds from the corporation by dominant shareholders;

14

> nonfunctioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization.

First United Bank & Trust v. PNC Fin. Servs. Group, Inc., 667 F. Supp. 2d 443, 458 (M.D. Pa. 2009) (citing E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000)).

Here, Plaintiffs have failed to plead facts to support a piercing the veil claim. In general, they have simply listed the relevant factors in hopes that the Count could withstand a motion to dismiss. As the court found in Partners Coffee Company, "the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level' and the complaining party must offer 'more than labels and conclusions or 'a formulaic recitation of the elements of a cause of action.'" Partners Coffee Co., 2010 WL 1177436, at *13 (quoting Twombly, 550 U.S. at 555) (rejecting a piercing the veil claim pursuant to Pennsylvania law).

In their Response to the Motion to Dismiss, even Plaintiffs appear to cast doubt on the adequacy of their claim: "Discovery will likely support findings of the other factors necessary to pierce the corporate veil. In this regard, the applicable statute of limitations, two years from non-payment of Plaintiffs' wages, has not expired. As such, to the extent the Court believes that the claims are premature, Plaintiffs do not object to their dismissal without prejudice." (Pls.' Resp. Defs.' Mot. Dismiss at 16.) The Court finds that Plaintiffs have failed to provide the factual support to survive Defendants' Motion to Dismiss in regard to the piercing the veil claim. Thus, the claim will be dismissed without prejudice.

For the reasons set forth above, Plaintiffs' Motion for Reconsideration is granted and the Court's June 1, 2010 Order that dismissed the case is vacated. Plaintiffs' counsel, however, is Ordered pay the attorneys' fees and costs associated with the Defendants having to file a Reply to

15

the Motion to Dismiss because of his conduct. In addition, Plaintiffs' Motion for Remand will be denied because the Court, at the very least, has diversity jurisdiction. Finally, Defendants' Motion to Dismiss will be granted in part and denied in part as described in detail in the accompanying Order.

An appropriate Order follows.